**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TAX ANALYSTS**, Plaintiff, v. **INTERNAL REVENUE SERVICE**, Defendant. | Case No. 25-cv-1409 (CRC) |

**MEMORANDUM OPINION AND ORDER**

The Freedom of Information Act ("FOIA") does not require the Internal Revenue Service ("IRS") to disclose information that would help tax cheats skirt the law. But when the agency withholds entire documents on that basis, it must adequately explain why no portions can be released. Because the IRS has not yet done so here, the Court grants in part and denies in part its motion for summary judgment.

## I. Background

The IRS administers and enforces the Internal Revenue Code. See Gardner v. United States, 213 F.3d 735, 738–39 (D.C. Cir. 2000). Among its most powerful tools is the audit, which tests compliance with tax laws. Audits are an "essential" part of "our self-reporting tax system." United States v. Bisceglia, 420 U.S. 141, 146 (1975).

Artificial intelligence ("AI") is transforming how work is done at a dizzying pace—including at the IRS. For instance, the agency now uses AI for audit selection. James R. McTigue, Jr., *Inside the IRS's Use of Artificial Intelligence*, U.S. GOV. ACCOUNTABILITY OFF. (Mar. 25, 2026), https://www.gao.gov/blog/inside-irs-use-artificial-intelligence [https://perma.cc/9CKC-WUH2].

Plaintiff Tax Analysts seeks copies of the "data cards" the IRS's AI models use when deciding which complex partnerships to audit. Def.'s Statement of Undisputed Material Facts ("Def.'s SUMF") ¶ 1. Data cards, according to Plaintiff's FOIA request, are "structured summaries of facts about aspects of datasets used in an AI model" that "can explain the context in which the model is intended to be used." Id.

The requested data cards, however, describe "in detail IRS methods, criteria, and analytical approaches used to identify taxpayers for compliance review." Id. ¶ 3. And disclosing this information "would reveal how the IRS selects cases" for audit. Id. So the IRS denied Plaintiff's request in full, citing FOIA Exemption 7(E)—which shields information if disclosure could foreseeably risk circumvention of the law. Id. ¶¶ 4, 6; see 5 U.S.C. § 552(b)(7)(E).

Dissatisfied, Plaintiff filed this suit. The IRS now moves for summary judgment, contending that the data cards contain exempt information and that no non-exempt information is reasonably segregable. See MSJ at 2–6. Plaintiff opposes and urges the Court to conduct *in camera* review of the withheld records. Opp. at 1.

## II. Legal Standards

FOIA cases are typically resolved through summary judgment. See Brayton v. Off. of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). To obtain summary judgment, the IRS must show that Exemption 7(E) applies and that disclosing any withheld information could cause reasonably foreseeable harm. See Reps. Comm. for Freedom of the Press v. FBI, 3 F.4th 350, 361 (D.C. Cir. 2021). The agency can make this showing through sufficiently detailed declarations, so long as its justification "appears logical or plausible." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (cleaned up). But even if Exemption 7(E) protects some information from disclosure, the IRS must also show that it has produced "[a]ny reasonably

segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The Court "must make specific findings of segregability regarding the documents to be withheld." Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1116 (D.C. Cir. 2007).

## III. Analysis

### A. Exemption 7(E)

Exemption (7)(E) allows an agency to withhold "information compiled for law enforcement purposes" if its release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The IRS maintains that this exemption insulates much of the information contained in the data cards. MSJ at 2–6. Plaintiff does not dispute this point. See Opp. at 11 (explaining that the "only issue" in this case is "segregability"). It is therefore conceded. See Wannall v. Honeywell, Inc., 775 F.3d 425, 428 (D.C. Cir. 2014); Malik v. DHS, No. 22-cv-698 (CRC), 2025 WL 763642, at *5 (D.D.C. Mar. 11, 2025) (Cooper, J.) ("A party opposing a summary judgment motion who does not address an argument advanced in the motion is deemed to have conceded the argument." (quoting Hairston v. Boardman, 915 F. Supp. 2d 155, 160 (D.D.C. 2013)).

In any event, the Court agrees with the IRS. "Exemption 7(E) sets a relatively low bar for the agency to justify withholding;" the agency need only "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." Blackwell v. F.B.I., 646 F.3d 37, 42 (D.C. Cir. 2011) (internal quotation marks and citation omitted). Any information that, if released, "could *increase the risks* that a law will be violated" is protected from disclosure. Mayer Brown LLP v. IRS, 562 F.3d 1190, 1193 (D.C. Cir. 2009).

Ronald Hodge—the Assistant Deputy Commissioner at the agency who oversees large-business audits—attests that the data cards contain information regarding the agency's AI model that would "reveal how the IRS selects cases [for audit], the thresholds and parameters it applies, and the internal logic of its enforcement models." Hodge Decl. ¶ 7. "If released, this information could reasonably be expected to risk circumvention of the law," Hodge explains, because "[t]axpayers, practitioners, or other actors could adjust their reporting behavior to evade detection"—thereby "undermining the IRS's ability to enforce the tax laws." Id. ¶ 8. That explanation makes perfect sense and satisfies the Exemption 7(E) standard. See Mayer Brown, 562 F.3d at 1192 (noting that if a FOIA request "sought a checklist used by agents to detect fraudulent tax schemes . . . , the applicability of the exemption would be obvious"). Indeed, courts routinely shield analogous audit-related information from disclosure on this basis. See Goldstein v. IRS, 174 F. Supp. 3d 38, 51–52 (D.D.C. 2016) (collecting cases). And because disclosure might reasonably facilitate law circumvention—namely, tax evasion—the foreseeable-harm requirement is likewise satisfied. See Kowal v. DOJ, 107 F.4th 1018, 1033 (D.C. Cir. 2024); Reps. Comm. for Freedom of the Press v. FBI, 754 F. Supp. 3d 56, 67 (D.D.C. 2024) (collecting cases).

B. Segregability

The IRS "cannot justify withholding an entire document simply by showing that it contains some exempt material." Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). Even when some information falls within a FOIA exemption, the agency must disclose any segregable portions of the records—i.e., non-exempt portions—unless "they are inextricably intertwined with exempt portions." Id.; see 5 U.S.C. § 552(b). Plaintiff contends that the IRS has not adequately justified its wholesale withholding of the data cards.

Opp. at 11. It is correct. "Without a sufficient Vaughn Index or more-detailed declarations, . . . the Court cannot conclude that [the IRS] has fulfilled its segregability obligation." Bagwell v. DOJ, No. 15-cv-531 (CRC), 2015 WL 9272836, at *5 (D.D.C. Dec. 18, 2015) (Cooper, J.).

An agency must provide a "detailed justification" for its conclusion that no further material is reasonably segregable. Johnson v. Exec. Off. for U.S. Att'ys, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting Mead, 566 F.2d at 261). Although an agency "is not required to provide so much detail that the exempt material would be effectively disclosed," id., it should at least "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document," Mead, 566 F.2d at 261. An agency may satisfy that burden by, for example, producing a "comprehensive Vaughn index"[1] alongside a declaration attesting to a "line-by-line review of each document" and explaining why no additional information can be released. Johnson, 310 F.3d at 776. On the other hand, a "blanket declaration" that documents do not contain reasonably segregable material, without more, is not enough. Wilderness Soc. v. DOI, 344 F. Supp. 2d 1, 19 (D.D.C. 2004).

The IRS attests that sensitive information is "intertwined throughout the records" and that "no isolated sections could be meaningfully extracted without disclosing protected techniques, procedures, or internal decision-making processes." Hodge Decl. ¶¶ 10–11. That may well be true. But the Court has no way of verifying that conclusory claim. The agency did not produce a Vaughn index, and its three-page declaration does not quite fill in the gaps. At present, neither Plaintiff nor the Court know what the data cards look like, how many pages are at issue, relatively how much of the withheld information is non-exempt, or how that material is dispersed

[1] "A Vaughn index describes the documents withheld or redacted and the FOIA exemptions invoked, and explains why each exemption applies." Prison Legal News v. Samuels, 787 F.3d 1142, 1145 n.1 (D.C. Cir. 2015).

throughout the withheld documents. See Opp. at 11. The declaration, in other words, "falls . . . short of the specificity required to justify non-segregation." McGehee v. DOJ, 800 F. Supp. 2d 220, 238 (D.D.C. 2011). So the IRS has "not carried its burden of demonstrating that all segregable information has been disclosed." Id.; see e.g., Biddle v. Dep't of Def., No. 23-cv-1380 (TJK), 2024 WL 4188510, at *3 n.3 (D.D.C. Sept. 13, 2024); Prop. of the People, Inc. v. DOJ, No. 17-cv-1193 (JEB), 2022 WL 1154680, at *4 (D.D.C. Apr. 19, 2022); Citizens United v. U.S. Dep't of State, 460 F. Supp. 3d 12, 26–27 (D.D.C. 2020); Bagwell, 2015 WL 9272836, at *5; Barnard v. DHS, 531 F. Supp. 2d 131, 140 (D.D.C. 2008).

Plaintiff argues that *in camera* review of the data cards is the appropriate next step. See Opp. at 14. But mandated *in camera* review is strong medicine. See Canning v. U.S. Dep't of State, 134 F. Supp. 3d 490, 502 (D.D.C. 2015) ("*In camera* review is a 'last resort.'"). The better approach is to first give the IRS an opportunity to reassess the issue of segregability and file a supplemental declaration or Vaughn index. See Bagwell, 2015 WL 9272836, at *5; Am. Immigr. Lawyers Ass'n v. DHS, 852 F.Supp.2d 66, 82 (D.D.C. 2012); Reply at 2–3. And if the agency thinks the Court's assessment of segregability would be aided by *in camera* review of a sample or representative portion of a data card, it is free to submit one along with its other supplemental filings.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's [16] Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART without prejudice. It is further

**ORDERED** that Defendant shall, by November 4, 2026, file a supplemental Vaughn index and/or supplemental declaration clarifying why no portions of the requested documents may be released. It is further

**ORDERED** that, upon producing these supplemental filings, Defendant may simultaneously renew its motion for summary judgment on segregability. Plaintiff shall oppose any such motion and/or file a cross-motion for summary judgment within 30 days after Defendant's motion is filed.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: October 14, 2026